UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL PARIZEAU, | CASE NO. 5:16CV2945 |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| v. | Magistrate Judge George J. Limbert |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | <u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE</u> |
| Defendant. | |

Plaintiff Michael Parizeau ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. In his brief on the merits, filed on May 1, 2017, Plaintiff asserts that the administrative law judge ("ALJ") erred: (1) in evaluating the treating physician's opinions when determining his residual functional capacity ("RFC"); and (2) by excluding any right hand limitations in the RFC finding after recognizing a severe right hand impairment. ECF Dkt. #13. Defendant filed a response brief on June 26, 2017. ECF Dkt. #15. Plaintiff did not file a reply brief.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on January 23, 2014, alleging disability beginning on July 17, 2013. ECF Dkt. #10 ("Tr.") at 90.[2] The application was denied initially and upon reconsideration. *Id.* at 105, 113. Plaintiff then requested a hearing, which was held on January

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

20, 2016.  *Id.* at 37.  On February 12, 2016, the ALJ issued a decision denying Plaintiff's claim. *Id.* at 16.  Subsequently, the Appeals Council denied Plaintiff's request for review.  *Id.* at 1. Accordingly, the February 12, 2016, decision issued by the ALJ stands as the final decision.  *Id.* at 16.

The instant suit was filed by Plaintiff on December 8, 2016.  ECF Dkt. #1.  On May 1, 2017, Plaintiff filed a brief on the merits.  ECF Dkt. #13.  Defendant filed a response brief on June 26, 2017.  ECF Dkt. #15.  Plaintiff did not file a reply brief.

**II.	RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE**

**A.	Medical Evidence**

On January 8, 2013, Plaintiff complained of anxiety and reported difficulty focusing at work, that he was worried about downsizing at his place of employment, feeling overwhelmed, and financial stressors.  Tr. at 300.  Plaintiff also stated that he had not been able to snowboard as frequently as he had in the past after a motor vehicle accident that occurred in 2011.  *Id.*  On examination, Plaintiff walked with a normal gait, and displayed mild anxiety and depression.  *Id.* at 301.  Plaintiff exhibited intact memory, normal attention and concentration, realistic, judgment, and appropriate insight.  *Id.*

In February 2013, Plaintiff returned for a follow-up examination regarding his anxiety. Tr. at 298.  Plaintiff reported overwhelming feelings and excessive worry, and it was noted that he exhibited intact memory, normal attention and concentration, realistic judgment, and appropriate insight.  *Id.* at 299.  On March 26, 2013, Plaintiff reported that he felt better compared to his last appointment, was taking his medication as prescribed, and was working to improve his exercise routine.  *Id.* at 295.  Plaintiff indicated that he was "50% better."  *Id.*  On examination, Plaintiff: walked with a normal gait; exhibited normal mood and affect; displayed intact memory; showed normal attention and concentration; and presented with realistic judgment and appropriate insight.  *Id.* at 296.  In June 2013, Plaintiff reported that he felt his condition was continuing to improve with medication, and that he felt more calm and less worried.  *Id.* at 292.  On examination, Plaintiff's concentration and attention were normal and he displayed intact memory, realistic judgment, and appropriate insight.  *Id.* at 293.

-2-

On February 10, 2014, Plaintiff established treatment with Jessica Bittence, M.D. Tr. at 265. Dr. Bittence's treatment notes indicate that Plaintiff had no medical problems other than the injuries that resulted from a motor vehicle accident in 2011, namely, a blowout fracture of the acetabulum and a fracture in his left foot. *Id.* at 265. Plaintiff reported that he was less active as a result of the injuries and that the pain caused him to have problems sleeping. *Id.* Continuing, Plaintiff stated that he returned to work following the 2011 accident, but that he was laid off in the summer of 2013 and could not find a new job. *Id.* On examination, Dr. Bittence noted a decreased range of motion in Plaintiff's right hip and left ankle, as well as post-traumatic and post-surgical changes in the heel. *Id.* at 268. Other than these findings, the examination showed normal musculoskeletal functioning and ambulation with normal gait. *Id.* Dr. Bittence referred Plaintiff for physical therapy, and electromyography ("EMG") testing and a nerve conduction study ("NCS"). *Id.* at 269. The EMG testing and NCS resulted in normal findings. *Id.* at 276.

In March 2014, Plaintiff began attending physical therapy. Tr. at 388. The physical therapist noted that Plaintiff reported pain in his left foot and knee, which worsened at night and could be helped by elevation. *Id.* at 389. Plaintiff completed fourteen physical therapy sessions before being discharged in May 2014 and provided with a home exercise program. *Id.* at 388-405. In April 2014, Dr. Bittence noted that the physical therapy made Plaintiff's condition "worse if not better," and that he had not been adequately treated with pain modulators. *Id.* at 274. On examination, Plaintiff displayed decreased range of motion in his right hip and left ankle, as well as weakness and pain in his left ankle. *Id.* at 273. Dr. Bittence noted normal musculoskeletal findings, and normal gait and station. *Id.* Following the examination, Dr. Bittence referred Plaintiff to Tom Bartsokas, M.D., for a second opinion . *Id.* at 274.

On April 8, 2014, Plaintiff completed a Function Report for the Social Security Administration. Tr. at 208. Plaintiff reported pain in his right hip and left heel causing him to be unable to stand or sit for "too long," and rendering him unable to lift heavy objects. *Id.* Continuing, Plaintiff reported that he was able to prepare meals, mow grass, drive a car, ride a bicycle, shop for groceries, manage his finances, snowboard for short periods (constituting one

-3-

or two runs), played pool (about once a month), and used Skype on his computer weekly. *Id*. at 209-215.

Plaintiff met with Dr. Bartsokas on May 6, 2014, and underwent a consultative examination. Tr. at 309. Dr. Bartsokas assessed chronic left ankle/foot pain and right hip pain resulting from the 2011 motor vehicle accident. *Id.* Plaintiff reported intolerable pain after standing for forty minutes and that it took twice as long for him to mow his yard as he had to take frequent rest breaks. *Id.* at 310. Dr. Bartsokas noted that Plaintiff reported "no improvement" after physical therapy, but admitted that his physical therapist had measured improved active range of motion in the ankle and increased lower extremity strength. *Id.* Plaintiff indicated that he was not interested in taking pain medication, and that he felt good when taking OxyContin and did not have a favorable response to gabapentin. *Id.* On examination, Dr. Bartsokas noted some swelling and severe restriction in range of motion in Plaintiff's left ankle. *Id.* at 311. Dr. Bartsokas also noted normal left ankle strength. *Id.* Plaintiff exhibited minimal tenderness to palpitation, intact strength, and mild range of motion restriction in the right hip. *Id.* X-rays of Plaintiff's left ankle were negative for bony abnormality, and showed normal alignment and joint spaces, with a small bone spur. *Id.* at 311, 320. Additionally, x-rays of Plaintiff's hips were negative for bony abnormality, and showed normal hip joint spaces and that the internal fixation appeared to be in good position. *Id.* at 311, 321.

On May 26, 2014, Steve McKee, M.D., a state agency medical consultant, reviewed Plaintiff's medical file and opined that he could perform light work with the following additional limitations: four hours of standing/walking in an eight-hour workday; occasional balancing, kneeling, crawling, and crouching; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent stooping; and occasional operation of foot controls with the left lower extremity. Tr. at 86.

Plaintiff underwent a psychological examination with Jennifer Haaga, Psy.D., on May 28, 2014. Tr. at 325. On examination, Plaintiff exhibited a euthymic mood with no manifestations of anxiety. *Id.* at 326. Plaintiff denied problems with anxiety, nervousness, or

worries, other than "driving anxiety," which he stated he had experienced since childhood. *Id.* Dr. Haaga indicated that Plaintiff stated he had been prescribed medications in the past, but did not find them to be helpful and chose to discontinue taking the medications. *Id.* at 327. Plaintiff denied problems with anxiety or depression at the time of the examination. *Id.* Dr. Haaga opined that Plaintiff could complete simple and more complex tasks. *Id.* at 328.

In July 2014, Dr. Bittence indicated that Plaintiff had: limited range of motion in the right hip; normal hip strength; mild swelling and decreased range of motion in the left ankle; normal ankle strength; normal station and gait; and normal insight and judgment. Tr. at 314-17.

On September 3, 2014, Dr. Bittence completed a medical source statement and opined that Plaintiff could: occasionally lift ten pounds; frequently lift five pounds; stand/walk for thirty to sixty minutes at a time, for a total of two to four hours; sit for one hour at a time for a total of two to four hours; rarely perform postural activities; and frequently reach, push/pull, and manipulate objects. Tr. at 332-33. Dr. Bittence further opined that Plaintiff: required restricted exposure to heights and moving machinery; would need to alternate between sitting, standing, and walking at will; had severe pain that would interfere with his concentration, take him off task, and cause absenteeism; would need to elevate his legs to ninety degrees at will; and would require additional unscheduled breaks of thirty minutes. *Id.* at 333.

Also on September 3, 2014, Dr. Bittence completed a questionnaire regarding Plaintiff's ability to perform mental work activities. Tr. at 334. Dr. Bittence opined that Plaintiff: had moderate to severe pain that may interfere with his ability to function mentally; could frequently perform most categories of mental work-related activity; could occasionally deal with work stress, complete a normal workday or workweek without psychologically-based symptoms, understand and carry out complex job instructions, and socialize. *Id.* at 334-35.

Due to "locking up," cramping, and pain in his right hip, Plaintiff underwent a computerized tomography ("CT") scan on October 8, 2014. Tr. at 336-37. The CT scan showed: orthopedic hardware applied along the posterior aspect of the acetabulum; degenerative changes along the acetabular margin and labro-acetabular cystic, especially along the anterior acetabular lip; and subtle erosive changes on the femoral head. *Id.* at 337.

Plaintiff returned to Dr. Bittence in February 2015. Tr. at 352. Dr. Bittence reviewed the CT scan taken in October 2014, and noted that Plaintiff was no longer on chronic pain medication and "seemed stable." *Id.* Plaintiff indicated that use of a hot tub was helping with the pain. *Id.* In August 2015, Plaintiff visited Dr. Bittence and complained of pain in his right hand and thumb joint. *Id.* at 362. Plaintiff stated that the pain had been present for six to seven months and that he experienced a "crunching" when he moved his right thumb. *Id.* Dr. Bittence performed an examination and found carpometacarpal arthritis and de Quervain's tenosynovitis in Plaintiff's right thumb. *Id.* at 366. Additionally, Dr. Bittence noted a positive Trendelenberg test, positive Fabere manuever, a decreased range of motion, and crepitus, pain, and weakness in Plaintiff's right hip. *Id.* Plaintiff displayed normal station, gait, judgment, insight, and memory. *Id.* A x-ray of Plaintiff's right hand showed no acute osseous or articular abnormality. *Id.* at 369.

On August 11, 2015, Dr. Bittence completed two medical source statements. Tr. at 353-56. In the first statement, Dr. Bittence opined that Plaintiff could: occasionally lift twenty pounds; frequently lift ten pounds; stand/walk for one hour at a time, for two to four hours total; sit for one to two hours, for four hours total; rarely perform postural activities; occasionally reach; frequently push/pull; and frequently engage in fine and gross manipulation. *Id.* at 353-54. Additionally, Dr. Bittence opined that Plaintiff: must alternate between sitting, standing, and walking at will; would experience moderate pain that would interfere with his concentration, take him off task, and cause absenteeism; and would not need to elevate his legs, but would require additional unscheduled work breaks of five minutes each. *Id.* at 354.

In a second questionnaire completed on August 11, 2015, Dr. Bittence assessed Plaintiff's ability to perform work-related mental activities. Tr. at 355-56. Dr. Bittence opined that Plaintiff had the constant or frequent ability to perform the activities surveyed by the questionnaire, except that he would be limited to occasionally: dealing with the public; relating to coworkers; functioning independently without redirection; completing a normal workday and workweek without interruption from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and understanding,

remembering, and carrying out complex, detailed but not complex, and simple job instructions. *Id.*

X-rays taken on August 31, 2015, showed no acute abnormalities in Plaintiff's right hand. Tr. at 382. In November 2015, Plaintiff visited Dr. Bittence. *Id.* at 372. Plaintiff did not report any ongoing symptoms in his hands and had a normal muscoskeletal examination, with normal station and gait. *Id.* at 376.

### B. Testimonial Evidence

The ALJ held a hearing on January 20, 2016, with Plaintiff, his attorney, and a vocational expert ("VE") present. Tr. at 37. On examination by the ALJ, Plaintiff testified that he only drove if necessary due to "driving anxiety" that he had experienced since childhood and pain and muscle spasms in his hip. *Id.* at 43. Continuing, Plaintiff stated that he stopped working on July 17, 2013, after his company downsized. *Id.* at 45. Plaintiff stated that he could not shift to a different position within the company due to his impairments and was laid off. *Id.* According to Plaintiff, he had been performing full-time work in shipping and receiving, which included loading and unloading trucks. *Id.*

When asked by the ALJ why he was unable to maintain full-time employment, Plaintiff testified that he had chronic pain in his left foot and ankle, and that he experienced spasms and cramping in his right hip. Tr. at 50. Plaintiff stated that he had returned to work around six months after the 2011 motor vehicle accident giving rise to his impairments, and that he was laid off approximately one year after he returned to work. *Id.* at 50-51. Continuing, Plaintiff explained that he had difficulties maintaining full-time status after he returned to work due to his impairments. *Id.* at 51-52.

Next, Plaintiff stated that he propped his leg up on a pillow a "pretty good part" of the day and that he occasionally used a cane, although he did not use a cane on the day of the hearing. Tr. at 52. Plaintiff indicated that he had underwent physical therapy, but that it worsened his condition. *Id.* at 53. When asked about pool therapy, Plaintiff stated that he had a pool at his house and tried to "get in there every now and then and do a walk around." *Id.*

Plaintiff testified that he did not wear special shoes or braces, but that he had worn slippers to the hearing because they offered the most comfort. *Id.* at 55.

The ALJ then asked Plaintiff if he had any other problems that prevented him from working. Tr. at 55. Plaintiff testified that he experienced anxiety from the pain that made it hard for him to concentrate, and that he had been experiencing this anxiety for a few years. *Id.* Continuing, Plaintiff stated that he had been taking anxiety medications for about a year and had not sought any other treatment for his anxiety. *Id.*

When asked about his typical day, Plaintiff testified that he woke up, fed his dog, and then prepared his child for school. Tr. at 56. Plaintiff stated that his wife and kids took care of most of the chores, but added that he could unload the dishwasher, if necessary. *Id.* at 56-57. Continuing, Plaintiff stated that he watched a little television, but that he was "not much on TV." *Id.* at 57. Plaintiff indicated that he read "mostly political stuff" on the Internet, and that he used Facebook newsfeeds to find articles to read. *Id.* Next, Plaintiff stated that he could go to the grocery store to shop, if necessary, and that he could push a cart around the store by leaning on it for support. *Id.* at 58. Plaintiff testified that he could only walk for twenty minutes and that he could lift small items like a gallon of milk. *Id.* at 59.

Following the ALJ's examination, Plaintiff was examined by his attorney. Tr. at 60. Plaintiff testified that his prescribed Percocet made him feel "flighty" and impacted his concentration. *Id.* Further, Plaintiff stated that his medication caused him to remain on his couch, so he only took it when he needed to "take some pain off." *Id.* Plaintiff testified that some days he needed to lay down all day due to the pain and that these days occurred randomly. *Id.* at 62-63. Additionally, Plaintiff stated that he experienced frequent panic attacks, occurring approximately once every week. *Id.* at 63. Plaintiff was then asked about his hobbies, and indicated that he was an avid snowboarder before the 2011 motor vehicle accident. Continuing, Plaintiff was asked whether he had snowboarded at all since the accident, to which he responded "not at all." *Id.* at 65-66.

After Plaintiff's attorney concluded the examination of Plaintiff, the ALJ examined the VE. Tr. at 69. The ALJ posed a hypothetical individual with Plaintiff's age, education, work

-8-

history, and RFC to the VE. *Id.* at 70. The VE testified that such an individual could not perform Plaintiff's past work, but could perform work as a charge account clerk, document preparer, and/or final assembler. *Id.* at 70-71. Next the ALJ posed the same hypothetical individual, but added the limitation that the individual would be off task twenty percent or more of a workday in addition to any regularly scheduled breaks. *Id.* at 71. The VE testified that no work would be available for such an individual. *Id.* The ALJ also asked if the addition of a cane would impact the jobs that the first hypothetical individual could perform. *Id.* at 74. The VE responded in the negative. *Id.* Continuing, the ALJ asked whether the option to elevate one of the extremities would impact potential employment for the first hypothetical individual. *Id.* at 74-75. The VE stated that this would vary among employers. *Id.* at 75-76.

## III.     **RELEVANT PORTIONS OF THE ALJ'S DECISION**

After the hearing, the ALJ issued a decision on February 12, 2016. Tr. at 16. The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. *Id.* at 21. Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 17, 2013, the alleged disability onset date. *Id.* The ALJ then stated that Plaintiff had the following severe impairments: degenerative joint disease of the right hip and left ankle with a history of fractures; and de Quervain's tenosynovitis of the right first finger. *Id.* Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 24.

After consideration of the record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1527(b), with the following additional limitations: occasionally operate foot controls with the left lower extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, kneel, crouch, and crawl; frequently stoop; avoid even moderate exposure to moving mechanical parts and unprotected heights; and standing and sitting at will without losing production. Tr. at 25.

Following the RFC finding, the ALJ stated that Plaintiff was unable to perform any past relevant work, was a younger individual on the alleged onset date, had at least a high school

education and could communicate in English, and that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* at 30. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Based on the above, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 17, 2013, the alleged onset date, through the date of the decision. *Id.* at 31.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in

scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI.     LAW AND ANALYSIS

### A.     Treating Physician Rule

Plaintiff first asserts that the ALJ erred in evaluating the opinions of Dr. Bittence, the treating physician, and assigning these opinions less than controlling weight when determining Plaintiff's RFC. ECF Dkt. #13 at 10. An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.

-11-

Social Security Rule ("SSR") 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010).  The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ).  However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence.  *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion.  *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (internal citation omitted).

-12-

Specifically, Plaintiff states that the ALJ determined that Plaintiff retained the capacity for sedentary work with additional limitations, and adopted some portions of Dr. Bittence's opinions. ECF Dkt. #13 at 12. Continuing, Plaintiff states that the ALJ rejected Dr. Bittence's opinions with regard to Plaintiff's limited capacity for sitting based on Dr. Bittence's observations, Plaintiff's subjective complaints during office visits, and Plaintiff's reported activities. *Id.* Plaintiff asserts that the ALJ did not address Dr. Bittence's opinion that Plaintiff would: need to elevate his legs; experience moderate to severe pain which would interfere with his concentration, take him off task, and cause absenteeism; and require additional unscheduled rest periods throughout the workday. *Id.* According to Plaintiff, the ALJ did not provide good reasons for rejecting selected portions of Dr. Bittence's opinions while crediting others.

Plaintiff contends that objective testing and repeated examination findings support Dr. Bittence's opinions regarding Plaintiff's limitations caused by hip and ankle pain. ECF Dkt. #13 at 13 (citing Tr. at 268, 273, 311, 316, 336-57, 366). Continuing, Plaintiff asserts that no examining source offered an opinion contrary to those of Dr. Bittence and that the ALJ acknowledged that the non-examining state agency physicians gave inadequate consideration to Plaintiff's subjective complaints of pain with weight bearing activities. *Id.* Plaintiff avers that even if the ALJ properly found that Dr. Bittence's opinions were not deserving of controlling weight, the ALJ did not justify the weight assigned to the opinions in light of any of the factors set forth in 20 C.F.R. § 404.1527.[3] *Id.* at 14.

Defendant asserts that the ALJ properly assigned little weight to Dr. Bittence's opinions regarding Plaintiff's mental limitations and partial weight to the opinions regarding Plaintiff's physical limitations. ECF Dkt. #15 at 10-11. Continuing, Defendant states that the ALJ provided "good reasons" for rejecting certain physical work restrictions assessed by Dr. Bittence, and indicates that the ALJ recognized that: the questionnaires regarding Plaintiff's limitations were internally inconsistent; all of the clinical evidence of record failed to account for

---

[3] The factors to be considered per 20 C.F.R. § 404.1527 are: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability, consistency, and specialization; and other factors relevant to the determination.

-13-

the assessment of sitting limitations and x-rays were contrary to the assessment of limitations in Plaintiff's left ankle and right hip; and the opinions were inconsistent with the daily activities acknowledged by Plaintiff. *Id.* at 11-13. Defendant also argues that the ALJ provided "good reasons" for assigning little weight to Dr. Bittence's assessment of mental work restrictions. ECF Dkt. #15 at 13. Specifically, Defendant asserts that the ALJ observed that the assessed mental limitations were inconsistent with the objective medical findings in the record. *Id.* at 14-15.

Plaintiff's argument is without merit as the ALJ provided "good reasons" for assigning Dr. Bittence's opinions less than controlling weight. Regarding Dr. Bittence's opinions as to Plaintiff's physical limitations, the ALJ noted that there was no evidence that Plaintiff pursued treatment of any kind between July 17, 2013, the alleged disability onset date, and February 10, 2014, roughly two weeks after he filed his application for DIB. Tr. at 26. Continuing, the ALJ provided a detailed summary of the treatment Plaintiff received for his physical impairments. *Id.* at 26-28. During this summary, the ALJ noted that:

> Dr. Bittence's progress notes reflect her repeated observations as to [Plaintiff's] diminished range of motion of the right hip and left ankle and more intermittent findings of contracture and deficits of motor strength affecting these joints. Despite these findings and [Plaintiff's] reports of severe pain with weight bearing, Dr. Bittence consistently described [Plaintiff's] gait and station as normal on examination.

Tr. at 27. Next, the ALJ indicated that the limitations described by the RFC finding recognized Plaintiff's diminished range of motion in the left ankle and right hip, but that there was no evidence the Plaintiff pursued treatment for his right thumb beyond the initial complaints to Dr. Bittence, and that he did not report any pain in his right thumb or associated symptoms in subsequent visits to Dr. Bittence. *Id.* at 28.

Continuing, the ALJ discussed Plaintiff's activities of daily living, as reported by Plaintiff in the Function Report he completed on April 8, 2014, stating that Plaintiff reported that he: attended to his personal care without assistance; prepared simple meals; drove a car; shopped in stores; managed his finances; participated in routine household chores; performed yard work in thirty minutes segments with breaks in between segments; continued to snowboard, albeit for

-14-

shorter periods of time and with less pleasure due to pain; and regularly spent time with friends playing pool and talking via Skype. Tr. at 28. The ALJ also noted that Plaintiff endorsed a more limited range of daily activities during the hearing, during which he: testified that his wife and children performed most household activities; denied social activities apart from spending time with his wife's family in the summer; and indicated that his involvement in daily activities was limited to feeding the dog, preparing his children for school in the morning, watching television, shopping for groceries, and reading news articles on the Internet via Facebook. *Id.*

The ALJ then reiterated Dr. Bittence's opinions regarding Plaintiff's physical impairments and stated:

> The undersigned gives Dr. Bittence's opinions partial weight. While she treated [Plaintiff] from February 2014 through November 2015, her statements are inconsistent with one another. These inconsistencies cannot be resolved by reference to Dr. Bittence's treatment notes as [Plaintiff] reported no change in his symptoms and Dr. Bittence's physical examinations remained consistent throughout the period for adjudication. Furthermore, Dr. Bittence's opinions are only partially supported by her objective clinical findings. Her observations as to [Plaintiff's] diminished range of motion of the left ankle and right hip support her conclusions as to [Plaintiff's] limited capacity for standing and walking, lifting and some limitations of his capacities for climbing, balancing, stooping, crouching, and crawling. However, neither her observations nor [Plaintiff's] subjective complaints during office visits suggest [Plaintiff's] limited capacity for sitting. Finally, the undersigned notes that Dr. Bittence's impression as to [Plaintiff's] functional limitations are inconsistent with [Plaintiff's] own reported activities during the period for adjudication as described above.

Tr. at 29.

The ALJ provided "good reasons" for assigning less than controlling weight to Dr. Bittence's opinions regarding Plaintiff's physical limitations. As described above, the ALJ reviewed Dr. Bittence's opinions and then determined that the opinions: were internally inconsistent; lacked evidence indicating that Plaintiff was limited in his ability to sit to the degree opined; and were inconsistent with Plaintiff's reported activities of daily living, which included playing pool, performing household tasks and yard work, driving a car, and snowboarding. *See* Tr. at 26-29. Accordingly, the ALJ explained the weight assigned to the opinions of Dr. Bittence and cited evidence supporting the assignment of such weight, thereby providing "good reasons" for assigning the opinions less than controlling weight.

-15-

The ALJ assigned little weight to Dr. Bittence's opinions regarding Plaintiff's mental impairments. Tr. at 23. Plaintiff briefly asserts that the ALJ did not address Dr. Bittence's opinion that he would experience "moderate to severe pain which would interfere with his concentration, take him off task and cause absenteeism and would require additional unscheduled rest periods throughout the workday." ECF Dkt. # 13 at 12. The ALJ did address Dr. Bittence's assessment of Plaintiff's mental limitations, indicating that Dr. Bittence attributed his functional limitations to his dyslexia. *See* Tr. at 23, 356. Continuing, the ALJ noted that there was no indication that Dr. Bittence, or any other source, performed any formal testing to evaluate Plaintiff's alleged reading disorder. *Id.* at 23. Additionally, the ALJ assessed that the limitations opined by Dr. Bittence were not reasonably related to dyslexia. *Id.* at 23.

The ALJ provided "good reasons" for assigning less than controlling weight to Dr. Bittence's opinion regarding Plaintiff's mental limitations. Specifically, the ALJ stated that Dr. Bittence did not perform any testing to assess Plaintiff's alleged dyslexia. *See* Tr. at 23. Additionally, the ALJ indicated that Dr. Bittence identified dyslexia as the basis for Plaintiff's mental limitations, namely, the occasional ability to: deal with the public; relate to coworkers; function independently without redirection; complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and understand, remember, and carry out complex, detailed but not complex, and simple job instructions. *Id.* (citing Tr. at 355-56). The ALJ then stated that these assessed limitations are not reasonably related to Plaintiff's alleged dyslexia. Additionally, the ALJ discussed both of the opinions issued by Dr. Bittence and stated:

> Dr. Bittence's reference to [Plaintiff's] pain is consistent with the [Plaintiff's] subjective complaints during office visits; however, her impressions as to the impact of [Plaintiff's] pain on his mental status are unsupported by objective findings noted in her treatment records.

Tr. at 23.

In sum, the ALJ: discussed Dr. Bittence's opinions regarding Plaintiff's mental limitations; found that there was never any formal testing for the alleged dyslexia; and determined that the mental limitations Dr. Bittence attributed to dyslexia were not reasonably

-16-

related to dyslexia. These findings constitute "good reasons" for assigning little weight to Dr. Bittence's opinions regarding Plaintiff's mental limitations.

Finally, Plaintiff briefly asserts that the ALJ failed to address the factors set forth in 20 C.F.R. § 404.1527, namely: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability, consistency, and specialization; and other factors relevant to the determination. ECF Dkt. #13 at 14. Plaintiff is incorrect. The ALJ detailed the Plaintiff's treatment relationship with Dr. Bittence, including: an explicit indication of the length of the treatment relationship; a summary of the treatment showing the frequency of examinations, and explaining that nature and extent of the treatment; a discussion of the supportability and consistency of the treatment notes and opinions rendered by Dr. Bittence; and a statement indicating the Dr. Bittence served as Plaintiff's primary care physician. Tr. at 23, 26-28. Accordingly, Plaintiff has not shown that the ALJ violated the treating physician rule or any applicable regulation.

### B.     RFC Finding

Plaintiff also asserts that the ALJ erred by failing to include any specific work-related limitations in the RFC finding arising from his right hand impairment, *i.e.*, de Quervain's tenosynovitis of the right thumb, which was found to be severe at step two of the five-step sequential evaluation. *Id.* Plaintiff states that the ALJ omitted any limitations arising from this impairment in the hypothetical posed to the VE, and thus remand is required. *Id.* at 15-16.

Defendant contends that the ALJ properly omitted right hand limitations from the RFC finding and that the record does not support the existence of work restrictions arising from Plaintiff's right hand/thumb impairment. ECF Dkt. #15 at 15. Continuing, Defendant states that the ALJ noted that after Plaintiff complained of right hand pain in August 2015, a x-ray revealed no acute abnormality and Plaintiff did not report any further hand complaints when he returned to Dr. Bittence in November 2015. *Id.* Defendant asserts that even if Plaintiff's complaints of hand pain were credible in August 2015, the record failed to document that the impairment continued for a continuous period of twelve months or significantly interfered with Plaintiff's use of his right hand and arm. *Id.* (citing Social Security Rule ("SSR") 82-52).

Plaintiff's argument is without merit. In August 2015, Plaintiff complained of pain in his right hand/thumb. Tr. at 366. A subsequent x-ray of Plaintiff's right hand showed no acute osseous or articular abnormality, and Plaintiff did not report any pain in his right hand/thumb to Dr. Bittence in November 2015. *Id.* at 372, 382. The ALJ indicated at step two of the sequential analysis that one of Plaintiff's severe impairments involved his right thumb. Tr. at 21. Plaintiff takes issue with the fact that the ALJ did not impose restrictions in the RFC finding relating to his right hand/thumb. *See* ECF Dkt. #13 at 14-16. Despite Plaintiff's insistence that the ALJ should have assigned additional limitations regarding his right hand/thumb, he does not indicate how this impairment warranted additional limitations or cite evidence showing that this right hand/thumb impairment limited his RFC. Plaintiff bears the responsibility of producing evidence showing that his impairments significantly limited his ability to function. *Moon*, 923 F.2d at 1181; 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(c). Here, Plaintiff has failed to produce any evidence showing that his right hand/thumb impairment caused any limitation not imposed by the ALJ in the RFC finding. Instead, Plaintiff attempts to shift the burden to the ALJ to show that his hand impairment did not warrant additional RFC limitations. Since the applicable case law, statues, and regulations place the burden on Plaintiff to furnish evidence establishing that he is entitled to disability, Plaintiff's argument fails and it was appropriate for the ALJ to omit right hand/thumb related restrictions from the RFC finding.

## **VII.  CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: February 12, 2018          */s/George J. Limbert*
                                  GEORGE J. LIMBERT
                                  UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).